FILED

2020 May-07 AM 10:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JOHN SWAUGER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  5:19-cv-01039-HNJ |
| | ) | |
| ROBERT P. ASHLEY, JR., Director, | ) | |
| DEPT. OF DEFENSE - | ) | |
| DEFENSE INTELLIGENCE | ) | |
| AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action proceeds before the court on Defendant Robert P. Ashley's Motion to Dismiss.  (Doc. 7).  Ashley seeks an order dismissing John Swauger's disability discrimination, retaliation, and hostile work environment claims against him due to the court's lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, due to a failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

The court concludes Swauger's claims warrant dismissal because he failed to exhaust his administrative remedies, and equitable tolling cannot relieve such failure. Therefore, based upon the analysis herein, the court **GRANTS** Ashley's motion to dismiss for Swauger's failure to exhaust his administrative remedies and **DISMISSES WITH PREJUDICE** Swauger's complaint.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction" and, as such, possess the power to hear cases only as authorized by the Constitution or United States' laws. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). In addition, federal courts possess "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Federal Rule of Civil Procedure 12(b)(1) permits a district court to dismiss a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of persuasion on establishing the court's subject matter jurisdiction. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

The Eleventh Circuit establishes particular modes of review for Rule 12(b)(1) challenges to subject matter jurisdiction:

> [A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint. If the challenge is facial, the plaintiff is left

with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised . . . Accordingly, the court must consider the allegations in the plaintiff's complaint as true . . . A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion . . .

Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered. Furthermore, . . . the district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing, *inter alia*, *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (internal quotation marks and alterations omitted).

Therefore, a factual challenge to subject matter jurisdiction typically permits a "trial court . . . to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 412–13. No presumptive truthfulness would attach to a plaintiff's claims, and "the existence of disputed material facts [would] not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*; *see also Lawrence*, 919 F.2d at 1528–29.

A plaintiff must exhaust his or her administrative remedies as a "jurisdictional prerequisite" to filing a lawsuit under the Rehabilitation Act. *Crawford v. Babbitt*, 186

F.3d 1322, 1326 (11th Cir. 1999); *accord Thomas v. Nicholson*, 263 F. App'x 814, 815 n.1 (11th Cir. 2008) (per curiam) ("It is well-settled that, as a jurisdictional prerequisite, a federal employee must timely exhaust administrative remedies prior to filing an employment discrimination suit under Title VII.") (citing *Crawford*, 186 F.3d at 1326); *Brown v. Snow*, 440 F.3d 1259, 1263 (11th Cir. 2006) ("[O]ur case law establishes that '[a] federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action . . . .'") (second alteration in original) (quoting *Crawford*, 186 F.3d at 1326); *see Doe v. Garrett*, 903 F.2d 1455, 1461 (11th Cir. 1990) ("[P]rivate actions against federal government employers under the [Rehabilitation] Act . . . must satisfy 'the requirement of exhaustion of administrative remedies in the manner prescribed by section [794a(a)(1)] and thus by Title VII.'") (second alteration in original) (quoting *Milbert v. Koop*, 830 F.2d 354, 357 (D.C. Cir. 1987)).[1]

---

[1] The court notes that in *Milam v. United States Postal Service*, 674 F.2d 860, 862 (11th Cir. 1982), the Eleventh Circuit ruled that "[t]imely filing [a complaint pursuant to Title VII's statute of limitations] is not a prerequisite to federal jurisdiction.  Permitting suit after the period has ended would not, therefore, work an extension of our jurisdiction." *Milam*, 674 F.2d at 862.  *Milam* portrays a significant factual distinction foreclosing its application to the instant case.

The plaintiff in *Milam* filed a civil complaint beyond the filing period prescribed in 42 U.S.C. § 2000e-16(c), the Title VII section directly applicable to federal employment.  *See Milam*, 674 F.2d at 861. Notwithstanding this procedural defect, however, the plaintiff exhausted all other administrative remedies upon which the government conditioned its waiver of sovereign immunity under Title VII. That is, the plaintiff exhausted her discrimination claim in full before the United States Postal Service. Thus, the issue in *Milam* did not concern whether the plaintiff "g[ave] the agency the information . . . need[ed] to investigate and resolve the dispute" – the central purpose of administrative exhaustion.  *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986); *see Ass'n for*

Accordingly, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction constitutes the proper vehicle for challenging a plaintiff's failure to exhaust administrative remedies in the federal employment sector. *See Brown*, 440 F.3d at 1263 ("We have applied the exhaustion requirement to affirm dismissals for lack of subject matter jurisdiction when the employee did not provide information requested by the investigating agency."); *Hawkins v. Esper*, 5:18-cv-00127-AKK, 2019 WL 5963520, at *5 (N.D. Al. Nov. 13, 2019) (the plaintiff failed to exhaust his administrative remedies pursuant to Title VII, thus precluding the court's subject matter jurisdiction over his claims); *Dillard v. Runyon*, 928 F. Supp. 1316, 1325 (S.D.N.Y. 1996) ("If a [Title VII] claimant has not met the filing requirements, . . . there is no waiver of sovereign immunity, and accordingly, no subject matter jurisdiction. . . .Accordingly, defendant's motion here properly is characterized as one pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss for lack of subject-matter jurisdiction."); 5B Charles Alan Wright, Arthur R.

---

*Retarded Citizens, Inc. v. Teague*, 830 F.2d 158, 160 (11th Cir. 1987) ("[E]xhaustion . . . serves a number of important purposes, including (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error."). As a result, *Milam* did not involve the same sovereign immunity and corollary separation-of-powers concerns present in the instant case. *C.f. Dillon v. Runyon*, 928 F. Supp. 1316, 1325 (S.D.N.Y. 1996) ("If a claimant has not met the filing requirements, . . . there is no waiver of sovereign immunity, and accordingly, no subject matter jurisdiction. Put differently, the government has not consented to be sued by a federal employee who has neither met with her EEO counselor within 45 days of the alleged discriminatory act, nor satisfactorily explained her failure to do so."). Accordingly, the court applies *Crawford*, not *Milam*, to the exhaustion issue at bar.

Miller & May Kay Kane, Federal Practice and Procedure § 1350 (3d ed. 1995) ("[T]he Rule 12(b)(1) motion to dismiss for a lack of subject matter jurisdiction . . . may be appropriate when the plaintiff has failed to exhaust administrative procedures that have been established, typically by statute, as a prerequisite to his bringing suit.").[2]

---

[2] Although "generally the [Supreme] Court has attached jurisdictional consequences to . . . the Government's waiver of [sovereign immunity] [,] . . . [i]t now is settled that courts should not accord jurisdictional status to a statutory condition—even one attached to the Government's waiver of immunity—unless 'Congress has "clearly state[d]"' as much." 14 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3654 (4th ed. 1998) (quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 402, 409 (2015)). Particularly relevant here, in *Fort Bend County v. Davis*, 139 S. Ct 1843 (2019), the Court ruled that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend County*, 139 S. Ct. at 1851. Notably, however, *Fort Bend County* involved a Title VII action against a private defendant, and thus did not present the sovereign immunity concerns arising when, as here, a plaintiff initiates a Title VII action against the federal government.

Nonetheless, given the Court's "distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, which 'seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times'", the Eleventh Circuit may revisit its holding in *Crawford v. Babbitt*, 186 F.3d 1322 (11th Cir. 1999) that a plaintiff's exhaustion of administrative remedies pursuant to Title VII constitutes a jurisdictional prerequisite to filing a civil action. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, Nos. 16-13596; 16-13601; 16-15467, 2020 WL 1074420, at *6 (11th Cir. Mar. 6, 2020) ("In recent years, the Supreme Court has been careful to distinguish between jurisdictional rules, which define the cases or persons within a court's adjudicatory authority, and mandatory claim-processing rules, which govern the orderly process of litigation.") (citing *Fort Bend County*, 139 S. Ct. at 1849); *Hollis v. W. Acad. Charter, Inc.*, 782 F. App'x 951, 954 (11th Cir. 2019) ("A plaintiff must first exhaust his administrative remedies with the [EEOC] before filing a complaint for discrimination under Title VII. . . .This is a mandatory claims processing rule, not a jurisdictional prerequisite . . . .") (citing *Fort Bend County*, 139 S. Ct. at 1849); *Reddick v. Republic Parking Sys.*, 2:17-cv-00728-KOB, 2019 WL 2601547, at *1 (N.D. Ala. June 25, 2019) ("Timely filing a charge of discrimination with the EEOC is *not* required to invoke a district court's subject matter jurisdiction over a Title VII claim.") (emphasis in original) (citing *Fort Bend County*, 139 S. Ct. 1843).

The court further notes that in *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit expounded upon the nature of a "motion to dismiss for failure to exhaust administrative remedies." *Bryant*, 530 F.3d at 1374. According to the Court, such a motion does not attack the court's subject matter jurisdiction, but functions "like a defense for lack of subject matter jurisdiction in one important sense: Exhaustion of administrative remedies is a 'matter[] in abatement, and ordinarily

And to be sure, a plaintiff's failure to comply with administrative filing deadlines constitutes a failure to exhaust administrative remedies, notwithstanding a plaintiff's timely filing of a complaint in federal court.  *See Hall v. Potter*, No. 06-CV-5003

---

[does] not deal with the merits.'"  *Id.* (alterations in original) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 at 78 n.15 (3d ed. 2004)).  The Court then prescribed a two-step inquiry for assessing a motion to dismiss for failure to exhaust administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . .

> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.  *The defendant[] bear[s] the burden of proving that the plaintiff has failed to exhaust his available administrative remedies*.  Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the [plaintiff] has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (emphasis added) (internal citations omitted) (citing, *inter alia*, *Bryant*, 530 F.3d at 1373–74).

Although *Bryant* and *Tuner* arose in the context of the Prison Litigation Reform Act ("PLRA") – not Title VII or the Rehabilitation Act – in *Tillery v. United States Dep't of Homeland Sec.*, 402 F. App'x 421 (11th Cir. 2010), the Eleventh Circuit extended *Turner* to motions to dismiss for failure to exhaust administrative remedies in Title VII actions.

Nevertheless, *Bryant* and *Turner* do not apply to the instant case.  *Crawford* predates *Bryant* and *Turner*, and thus constitutes binding precedent because "only the Supreme Court or [the Eleventh Circuit] sitting en banc can judicially overrule a prior panel decision."  *Cargill v. Turpin*, 120 F.3d 1366 (11th Cir. 1997) (quoting *United States v. Woodard*, 938 F.2d 1255, 1258 (11th Cir. 1991), *cert. denied*, 502 U.S. 1109 (1992)).  Therefore, *Bryant* and *Turner* may become applicable if the Eleventh Circuit or the Supreme Court extends *Fort Bend County* to Title VII actions against the federal government in abrogation of *Crawford*.  Accordingly, although Ashley avers Swauger's complaint warrants dismissal pursuant to the rubric of *Bryant* and *Turner* "for failure to timely exhaust administrative remedies", the court heeds his designation of the filing as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, and thus, subject to the dictates of *Crawford*.  (Doc. 7 at 7); *see Dillon*, 928 F. Supp. at 1325.

And alternatively, the court would reach the same result even if *Bryant*, *Turner*, and *Tillery* applied to the exhaustion issue at bar rather than *Crawford*.

(JFB)(AKT), 2009 U.S. Dist. LEXIS 18955, at *18–19 (E.D.N.Y Mar. 4, 2009) ("Where a plaintiff fails to appeal a decision to the EEOC within the thirty-day statutory limit but does ultimately file a civil action within ninety days of the EEOC's final determination of that untimely appeal, the timely filing of the federal court action does not cure that plaintiff's original failure to abide by the requisite filing periods."). The plaintiff bears the burden of proving he exhausted his administrative remedies. *See Crawford*, 186 F.3d 1322; *OSI, Inc.*, 285 F.3d at 951 ("In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists.").

## STATUTORY AND REGULATORY FRAMEWORK

The Rehabilitation Act prohibits federal and private employers from discriminating against employees on the basis of a disability. 29 U.S.C. § 701, *et seq.*, as amended. The Rehabilitation Act incorporates by reference the "remedies, procedures, and rights" prescribed in § 2000e-16 of the Civil Rights Act of 1964. *Id.* § 794a(a)(1). Thus, an aggrieved federal employee must press a disability discrimination claim pursuant to the administrative complaint and appeals process provided in the Equal Employment Opportunity Commission ("EEOC") regulations. *See id*; 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.103(a).

The employee must first attempt to resolve his or her claim through informal counseling. *Id.* § 1614.105(a). If informal counseling fails to resolve the matter, the

employee may file a discrimination complaint with the allegedly offending agency. *Id.* § 1614.106(a)-(c). The agency must investigate the matter upon receipt of the complaint, after which the employee may request a hearing before an EEOC administrative judge ("AJ"). *Id.* §§ 1614.106(e), 1614.108(f). Once the AJ renders a decision, the agency must "take final action on the complaint by issuing a final order within 40 days of receipt of the hearing file and the administrative judge's decision." *Id.* § 1614.110(a). If the agency fails to issue a final order within the forty-day period, the AJ's decision becomes the final action of the agency by operation of law. *Id.* § 1614.109(i).

The employee may file an appeal from an agency's adverse, final action with the EEOC Office of Federal Operations ("OFO") within thirty days of the receipt thereof. *Id.* §§ 1614.401(a), 1614.402(a). Alternatively, an employee who elects not to file an appeal with the OFO may file a civil action in the district court within ninety days of receipt of the agency's final action. *Id.* § 1614.407(a). "[W]hen a complainant designates an attorney as a representative, service of all official correspondence shall be made on the attorney and the complainant, but time frames for receipt of materials shall be computed from the time of receipt by the attorney." *Id.* § 1614.605(d)). However, notwithstanding the designation of an attorney, the employee "shall at all times be responsible for proceeding with the complaint." 29 C.F.R. § 1614.605(e).

## BACKGROUND

Plaintiff John Swauger alleges that the Defense Intelligence Agency ("DIA") fostered a hostile work environment, and discriminated and retaliated against him on the basis of his disability, in violation of the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, as amended.  (Doc. 1).  On July 15, 2013, Swauger submitted to the DIA a "Designation of Representative for Discrimination Complaint" form to provide notice that attorney Adam Morel would represent him in any future discrimination complaint.  (Doc. 15).  Swauger filed a discrimination complaint with the EEOC on February 21, 2014.  (Doc. 7-3 at 1).  After the EEOC investigated Swauger's complaint, Swauger requested a hearing before an EEOC AJ.  (*Id.*)  On March 24, 2015, the DIA filed a motion for summary judgment before the AJ.  (*Id.*)

On December 12, 2016, the AJ issued an order and decision granting the DIA's motion for summary judgment.  (Doc. 7-1 at 11–46).  The AJ appended thereto a certificate of service attesting that he mailed the decision and order to Swauger and Morel on December 12, 2016.  (*Id.* at 46).  The certificate of service further stated:  "For timeliness purposes, the Commission will presume that this <u>Decision</u> and <u>Order</u> was received within five (5) calendar days of mailing."  (*Id.*)

On January 27, 2017, the DIA issued a final order adopting in full the AJ's December 12, 2016, order and decision.  (*Id.* at 1–8).  The DIA appended thereto a certificate of service guaranteeing that on January 27, 2017, it transmitted the final order

to Swauger and Morel via "Certified Mail – Affirmative Receipt Requested."  (*Id.* at 8).

Both the DIA's and AJ's certificates of service display identical information for Morel's

address.  (*Compare* Doc. 7-1 at 8 *with* Doc. 7-1 at 46).  The United States Postal Service

attempted to deliver the final order to Morel on February 6, 2017, and therewith it left

a notice at Morel's address.  (Doc. 18 at 9).  The USPS returned the correspondence to

the DIA on September 27, 2017, marking it as "Unclaimed/Being Returned to Sender."

(Doc. 18 at 12).

On October 4, 2017, Swauger filed an appeal with the EEOC's OFO.  (Doc. 7-

3 at 1).  On April 3, 2019, the OFO dismissed the appeal as untimely.  (*Id.* at 1–5).  The

dismissal order stated:

> On appeal, [Morel] notes that the [DIA] had not issued a final order.
> However, the [DIA] provided evidence showing that it issued a final
> order, which was delivered to [Swauger] on February 6, 2017.  A delivery
> attempt was made to [Morel] on February 6, 2017, but the copy of the
> final order was undelivered, marked as "Unclaimed/Being Returned to
> Sender" on September 27, 2017, and ultimately returned to the [DIA] on
> October 5, 2017.[3]

(*Id.* at 2).  The OFO acknowledged that pursuant to 29 C.F.R. § 1614.605(d), "when a

complainant designates an attorney as a representative . . . time frames for receipt of

materials shall be computed from the time of receipt by the attorney."  (*Id.*) (citing 29

---

[3] The OFO noted "[t]here is no explanation as to why the U.S. Postal Service took about 7 months to return [the copy] to the [DIA]."  (Doc. 7-3 at 2 n.2).

C.F.R. § 1614.605(d)).  However, the OFO explained that while Morel did not receive the DIA's final order, he did receive the AJ's December 12, 2016, decision.  (*Id.*)

To that end, the OFO noted that the AJ's decision "informed [Swauger] that he had appeal rights starting 40 calendar days after the AJ's decision, if the [DIA] did not issue a final order."  (*Id.*)  Thus, the OFO reasoned, Morel should have treated the AJ's decision as the DIA's final action for purposes of appeal when he failed to receive the DIA's final order within forty days of his receipt of the AJ's decision.  (*Id.*)  Pursuant to the AJ's certificate of service, Morel presumptively received the AJ's decision on December 17, 2016 -- five days after the December 12, 2016, mailing date.  (*Id.* at n.3).  Accordingly, the OFO concluded, the AJ's decision became appealable on January 26, 2017 – which represents forty days after December 17, 2016 -- and Swauger's appeal to the OFO became due within thirty days thereafter, on February 27, 2017.[4]  (*Id.*)

Swauger timely filed the complaint in this action on July 3, 2019.  (Doc. 1). Ashley avers Swauger's complaint warrants dismissal on three bases.  First, Ashley contends the court may not entertain Swauger's claims because he failed to exhaust his administrative remedies by filing an untimely appeal with the OFO.  (Doc. 7 at 7–12). Second, Ashley asserts the complaint fails to state a claim upon which relief can be

---

[4] The thirtieth day after December 17, 2016, occurred on Saturday, February 25, 2017.  Thus, Swauger's appeal became due the next business day, Monday, February 27, 2017.  (Doc. 7-3 at 2 n.3) (citing 29 C.F.R. § 1614.604[d]).

granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because he does not constitute the proper defendant for Swauger's claims.  (*Id.* at 12–15).  Finally, Ashley seeks dismissal of Swauger's retaliation claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (Doc. 7 at 15–19).

## DISCUSSION

As a preliminary matter, the court must determine whether Ashley's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction raises a facial or a factual challenge to the court's jurisdiction.  As previously discussed, facial challenges attack subject matter jurisdiction "based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).  "In other words, the allegations themselves reveal that subject matter jurisdiction is deficient." *Miccosukee Tribe of Indians v. Cypress*, 975 F. Supp. 2d 1298, 1304 (S.D. Fla. 2013).

By contrast, "[i]f a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).[5] Further, "a plaintiff is also required to submit facts through some evidentiary method." *Id.*  Thus, "[i]n a factual attack, the Court may consider matters outside the Complaint,

---

[5] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions decided prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

and is free to weigh evidence and satisfy itself as to the existence of its power to hear

the case." *Hawthorn Corp. v. United States*, 98 F. Supp. 3d 1226, 1232 (M.D. Fla. 2015).

In this case, Ashley's jurisdictional challenge relies upon the DIA's final order

and the OFO's dismissal order, each of which Ashley appended to his motion as

extrinsic matters outside the pleadings.[6]  Likewise, Swauger appended to his response

in opposition to Ashley's motion the DIA's final order and a Designation of

Representative for Discrimination Complaint.  (Doc. 15-1).  Based upon the parties'

submission of extrinsic materials outside the pleadings, Ashley's motion represents a

factual challenge to the court's subject matter jurisdiction.  *See Chevaldina v. Katz*, 787 F.

App'x 651, 653 (11th Cir. 2019) (per curiam) (defendants mounted a factual jurisdictional

challenge by presenting deposition testimony and other extrinsic evidence in support

of its Rule 12(b)(1) motion); *Irvin v. United States*, No. 1:07-CV-0926-ECS, 2007 U.S.

Dist. LEXIS 105567, at *7 (N.D. Ga. Oct. 9, 2007) ("Defendant's motion to dismiss

for lack of subject matter jurisdiction is based on Plaintiff's failure to prove that he has

exhausted his administrative remedies, and both Plaintiff and Defendant have attached

---

[6] Ashley relies upon the OFO's dismissal order for the timeframes cited therein regarding the transmission of the DIA's final order to Swauger and Morel.  (Doc. 7 at 10–11).  As aforenoted, the OFO's dismissal order asserts that the DIA "provided evidence showing that it issued a final order, which was delivered to [Swauger] on February 7, 2017.  A delivery attempt was made to [Morel] on February 6, 2017, but the copy of the final order was undelivered, marked as 'Unclaimed/Being Returned to Sender' on September 27, 2017, and ultimately returned to the [DIA] on October 5, 2017."  (Doc. 7-3 at 2).  Because the OFO's dismissal order merely referenced the evidence the DIA provided regarding the transmission of the final order to Swauger and Morel, the court issued an order for Ashley to produce such evidence.  (Doc. 17).  Ashley then filed the relevant USPS tracking histories.  (Doc. 18).

exhibits on this point. Thus, the inquiry is in the nature of a factual attack and necessarily requires the examination of evidence outside the complaint to determine if Plaintiff, indeed, failed to exhaust his administrative remedies."). Accordingly, the court "will weigh the evidence in a manner fit to satisfy itself of the existence of subject matter jurisdiction over [Swauger's] claims." *Irvin*, 2007 U.S. Dist. LEXIS 105567, at *7.

Pursuant to the analysis herein, the court concludes it must dismiss Swauger's complaint for failure to exhaust his administrative remedies. The court thus dismisses Swauger's complaint on this basis alone, and will not consider Ashley's alternative theories of dismissal.

"The rule is well settled that if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884); *accord Hagner v. United States*, 285 U.S. 427, 430 (1932). Recognizing this established common law rule, the Eleventh Circuit opined that proof of a proper address, adequate postage, and placement in the mail creates a rebuttable presumption the addressee received the item. *See In Re E. Coast Brokers & Packers, Inc.*, 961 F.2d 1543, 1545 (11th Cir. 1992) (A rebuttable presumption of receipt arises if "(1) the document was properly addressed; (2) the document was stamped; and (3) the document was mailed."); *accord Konst v. Fla. E. Coast Ry.*, 71 F.3d 850, 851 (11th

Cir. 1996); *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1240–42 (11th Cir. 2002).

Furthermore, the Eleventh Circuit recognizes "a presumption of three days for receipt

by mail." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 953 n.9 (11th Cir. 2005) (citing *Zillyette*

*v. Capital One Fin. Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999)).

In support of his motion to dismiss, Ashley advances the same argument the

OFO set forth in dismissing Swauger's appeal:  On the fortieth day after the issuance

of the AJ's decision, Swauger should have treated the AJ's decision as the DIA's final

action and appealed such decision to the OFO within thirty days.  (Doc. 7 at 10–12).

In response, Swauger maintains that Ashley's argument fails because the DIA in fact

issued a final order, which Morel never received.  (Doc. 15 at 1–2, n.1).  Swauger further

contends the AJ's decision failed to indicate it would become the DIA's final action if

the DIA took no action thereupon within forty days, or that an appeal from the AJ's

decision to the OFO would become due within thirty days thereafter.  (*Id.*)

Setting aside the foregoing contentions,[7] the court concludes Morel received the

DIA's final order pursuant to this Circuit's three-day presumption of receipt; thus,

---

[7] Pursuant to the analysis herein, Swauger's complaint warrants dismissal notwithstanding the arguments the parties advance in their briefing.  In any event, the court discerns a deficiency in the AJ's decision which forecloses Ashley's argument.

Pursuant to 29 C.F.R. § 1614.110(a), an agency's final order "shall contain notice of the complainant's right to appeal to the [OFO]."  29 C.F.R. § 1614.110(a).  This provision required the AJ's decision to adequately notify Swauger of his appeal rights if, as Ashley contends, Swauger should have treated the AJ's decision as the DIA's final order when Morel failed to receive the DIA's final order within forty days of the AJ's decision.  *See Moncus v. Johanns*, No. 2:03CV416-W, 2006 U.S. Dist. LEXIS 4648, at *28–29 (M.D. Ala Jan. 20, 2006) (an AJ's decision must contain notice of the complainant's appeal

Swauger failed to timely file his appeal with the OFO and, in turn, failed to exhaust his

administrative remedies.   As discussed above, pursuant to the common law and

Eleventh Circuit precedent, the court presumes the addressee of correspondence --

---

rights pursuant to § 1614.110(a) when it becomes the agency's final order by operation of law); *Staropoli v. Donahoe*, 786 F. Supp. 2d 384, 390 (D.C. Cir. 2011) ("It would frustrate the very purpose of the notice regulations to hold that [AJ] decisions may automatically trigger the statute of limitations without providing notices equivalent to those required by § 1614.100.").

The AJ's decision notified Swauger, in relevant part, that he "may appeal to the [OFO] within 30 calendar days of receipt of the [DIA's] final order" and "may only appeal directly from [the] decision in the event that the [DIA] has not issued its final order within 40 calendar days of its receipt of the hearing file and [the] decision."  (Doc. 7-1 at 44).  However, pursuant to Chapter 9 of the EEOC's Management Directive 110, the AJ's decision must inform the complainant that "the 30-day period for filing an appeal of the agency's final order/Administrative Judge's decision begins at the conclusion of the agency's 40- or 60-day review period."  EEOC, Management Directive 110, Chapter 9, § II.A.1.(c)(3), https://www.eeoc.gov//federal/directives/md-110_chapter_9.cfm (last visited Mar. 24, 2020).  The AJ's decision failed to include this notice.  Accordingly, "the chief deficiency in the [AJ's] notice . . . was that the notice did not clearly advise [Swauger] that a 30-day appeals period would commence at the end of the [DIA's] 40-day review period if the [DIA] had not issued its final order by that time."  *Staropoli*, 786 F. Supp. 2d at 390; *accord Moncus*, 2006 U.S. Dist. LEXIS 4648, at *29 n.13 ("The administrative judge's decision advised plaintiff of the 30-day period for appeal to the EEOC from receipt of the agency's final order.  It further advised plaintiff that he could appeal directly from the decision only if the agency failed to issue a final order within 40 days of its receipt of the decision, but it did not clearly advise plaintiff that the 30-day appeal period commenced 40 days from the agency's receipt of the decision.").

Furthermore, although the AJ's decision directed Swauger to Chapter 10 of Management Directive 110 "[f]or further guidance regarding appeals," (doc. 7-1 at 44), Chapter 10 does not explain that when the AJ's decision becomes appealable because the agency fails to issue a final order within forty days of the AJ's decision, any appeal to the OFO becomes due within thirty days thereafter.  *See generally* EEOC, Management Directive 110, Chapter 10, https://www.eeoc.gov/federal/directives/md-110_chapter_10.cfm#_Toc425745423 (last visited Mar. 24, 2020); *c.f. Jones v. Spencer*, 4:17-CV-00145-FL, 2018 U.S. Dist. LEXIS 138708, at *12–13 (E.D.N.C. Aug. 16, 2018) (although the AJ's decision did not explicitly describe the appeal procedures and deadlines, it referred the plaintiff to a previous version of the Management Directive which provided that "[i]f an agency fails to take any action during the 40-day period, the [ALJ's] decision would be deemed ratified and the complainant would be entitled to file an appeal of the [ALJ's] decision as ratified after the expiration of the 40-day period.") (alterations in original) (citation omitted).  Accordingly, because the AJ's decision failed to adequately notify Swauger of his appeal rights vis-à-vis the expiration of the applicable 40-day period, Ashley cannot fault Swauger for failing to timely appeal the AJ's decision to the OFO upon expiration of that period.

which is properly addressed, stamped, and placed in the mail -- receives such item within three days of mailing. *See Rosenthal*, 111 U.S. at 193; *In Re E. Coast Brokers & Packers, Inc.*, 961 F.2d at 1545.

In the instant case, the evidence regarding the DIA mailing the final order to Morel consists of (1) the certificate of service the DIA appended to its final order; (2) the OFO's dismissal order discussing the attempted delivery of the final order; and (3) a USPS tracking history documenting its delivery attempt upon Morel. The DIA's certificate of service avers it transmitted the final order via "Certified Mail – Affirmative Receipt Requested" on January 27, 2017, to Morel's address in Birmingham, Alabama. (Doc. 7-1 at 8). Morel does not refute the accuracy of his address as printed on the certificate of service. According to its tracking history, the USPS "attempted to deliver [the final order] at 2:40 pm on February 6, 2017 . . . and notice was left." (Doc. 18 at 9). Further, on September 27, 2017, the USPS marked the final order as "Unclaimed/Being Returned to Sender" and mailed it back to the DIA. (*Id.* at 11–12, Doc. 20-4 at 4). Morel fails to offer any evidence rebutting the presumption he received the final order.[8]

---

[8] On April 13, 2020, the court ordered the parties to file by April 23, 2020, additional briefing vis-à-vis the afore-discussed presumption of receipt. (Doc. 19). However, this District's General Order In Re: COURT OPERATIONS DURING THE PUBLIC HEALTH EMERGENCY CAUSED BY THE COVID-19 VIRUS extended the April 23, 2020, deadline to May 1, 2020. Ashley responded to the court's order on April 23, 2020. (Docs. 20 & 21). To date, Swauger has not responded to the court's order.

Based upon the unrepudiated evidence that the DIA mailed its final order to Morel's proper address via certified mail on January 27, 2017, and the USPS attempted to deliver it to Morel on February 6, 2017, the court presumes Morel received the order on February 9, 2017.  *See Zillyette*, 179 F.3d at 1342 ("[A] three-day period . . . provides an appropriate period for a plaintiff to act to receive an unsuccessfully delivered letter [of which he or she received notice of the attempted delivery].");  *Rives v. Lahood*, No. 1:11-CV-1940-RLV-JFK, 2012 U.S. Dist. LEXIS 195040, at \*9 (N.D. Ga. June 8, 2012) ("There is a presumption that a final agency decision is received by a complainant three days from when it was mailed.").

To be sure, according to its Domestic Mail Manual, the USPS deems mail "unclaimed" when the "[a]ddressee abandoned or failed to call for mail."  Mailing Standards of the United States Postal Service, Domestic Mail Manual, Exhibit 1.4.1, https://pe.usps.com/text/dmm300/507.htm (last visited March 16, 2020).  Thus, the USPS designating the DIA's order addressed to Morel as "Unclaimed/Returned to

---

The court notes that according to its tracking history, the USPS attempted delivery upon Morel in "BIRMINGHAM, AL 35209" and marked the final order as "Unclaimed/Being Returned to Sender" from "BIRMINGHAM, AL 35209."  (Doc. 18 at 9, 12).  However, the certificate of service the DIA appended to its final order printed Morel's zip code as 35216.  (Doc. 7-1 at 8).  Nevertheless, Swauger's administrative filings portray Morel's zip code as both 35216 and 35209.  For example, Morel printed his zip code as 35209 in Swauger's "RESPONSE IN OPPOSITION TO THE AGENCY'S MOTION FOR SUYMMARY [sic] JUDGMENT."  (Doc. 20-2 at 25).  In addition, Morel printed his zip code as 35209 in Swauger's "STATEMENT IN SUPPORT OF APPEAL", (doc. 20-3 at 26), though the cover letter appended thereto prints his zip code as 35216.  (Doc 20-3 at 1).  The court discerns that zip code 35209 locates adjacently to zip code 35216.  The court thus presumes the zip code discrepancy reflects an anomaly in USPS mail delivery service to zip code 35216, particularly as Morel printed his zip code as both 35216 and 35209 in Swauger's administrative filings.

19

Sender" engenders a reasonable inference that it perfected delivery of the order upon Morel, yet Morel failed to retrieve it.  *See id*; *Nibagwire v. Gonzales*, 450 F.3d 153, 156 (4th Cir. 2006) ("When certified mail is used, the Postal Service's delivery efforts are documented: there is a return receipt or written proof of attempted delivery and notification to the addressee of certified mail.").

Accordingly, based upon the objective evidence that the USPS attempted to deliver the DIA's final order to Morel, Swauger's contention that Morel "was never served with the [DIA's] final order" fails to overcome the presumption that Morel received the order within three days of its February 6, 2017, delivery.  *See Barnett*, 293 F.3d at 1241 ("[A] party's failure to uncover an item, which it was presumed to have received, does not mean that it never received the item and does not rebut the presumption of delivery."); *Belue v. Oliver*, No. 3:12-cv-3461-AKK, 2013 U.S. Dist. LEXIS 27441, at *6–7 (N.D. Ala. Feb. 28, 2013) (the plaintiff failed to rebut the three-day presumption of receipt of an EEOC letter by merely contending she received it twenty-two days after its mailing and providing no evidence that the EEOC delayed mailing the letter).  Furthermore, Swauger does not cite to any statute, regulation, or judicial doctrine that would admit his October 4, 2017, appeal to the OFO as timely.[9]

---

[9] Initially, the court cannot heed the parties' arguments as to equitable tolling because "[t]olling is not available" against a jurisdictional bar.  *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 n.3 (2015); *see also id.* at 408-09 ("When [Congress makes a time bar jurisdictional], a litigant's failure to comply with the bar deprives a court of all authority to hear a case. Hence, a court must enforce the limitation even if . . . equitable considerations would support extending the prescribed time period.") (citations

## CONCLUSION AND ORDER

Based upon the foregoing analysis, the court **GRANTS** Ashley's Motion to dismiss and **DISMISSES WITH PREJUDICE**[10] Swauger's complaint.

---

omitted).

Nevertheless, in the event the afore-described *Bryant/Turner/Tillery* rubric applies to the exhaustion issue rather than *Crawford*, the court considers whether Swauger's failure to exhaust his administrative remedies finds dispensation in the principles of equitable tolling. *See* § 1614.604(c) ("The time limits in [EEOC regulations] are subject to waiver, estoppel and equitable tolling."); *Forehand v. Fla. State Hosp.*, 89 F.3d 1562, 1570 n.17 (11th Cir. 1996) ("[P]rocedural defects in Title VII suits are subject to equitable modification.") (citing *Zipes*, 455 U.S. at 392)).   "The Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6. F.3d 1474, 1479 (11th Cir. 1993).   Equitable tolling generally excuses a plaintiff's failure to exhaust administrative remedies in "situations in which an action was pending before state court, situations in which the defendant . . . concealed facts supporting a cause of action under Title VII, and situations in which the plaintiff was misled by the defendant about the nature of his rights under Title VII." *Manning v. Carlin*, 786 F.2d 1108, 1109 (11th Cir. 1986) (citing *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295 (5th Cir. 1979)).   Equitable tolling does not ease the exhaustion requirement "when the claimant fails to exercise due diligence." *Howell v. Dep't of the Army*, 975 F. Supp. 1293, 1301 (M.D. Al. 1997); *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.").

The court does not discern any basis for extending equitable tolling to Swauger's untimely appeal to the OFO.   As elaborated above, the circumstances of the instant case portray that Swauger's untimely appeal arose not from "an inequitable event", but rather from a want of diligence. *Murphree v. Comm'r*, 644 F. App'x 962, 967 (11th Cir. 2016) ("The plaintiff bears the burden of showing that equitable tolling is warranted. . . . In general, the plaintiff must show that, despite exercising due diligence, an inequitable event prevented him from complying with the time limit.").   Accordingly, the court would decline to equitably excuse Swauger's failure to exhaust his administrative remedies.

[10] *See Davis v. O'Rourke*, No. 1:18-CV-00937-MHC-WEJ, 2018 U.S. Dist. LEXIS 229089, at *16 n.6 (N.D. Ga. July 18, 2018) ("Given [the plaintiff's] failure to exhaust administrative remedies . . . , any opportunity for him to amend the Complaint would be futile.   Thus, dismissal here should be **WITH PREJUDICE**."); *Hardy v. Potter*, No. CV408-223, 2010 U.S. Dist. LEXIS 81007 at *1–10 (S.D. Ga. July 15, 2010) (the court recommended the dismissal with prejudice the plaintiff's claims for failing to exhaust his administrative remedies pursuant to the Rehabilitation Act), *report and recommendation adopted*, No. CV408-233, 2010 U.S. Dist. LEXIS 81039 (S.D. Ga., Aug. 9, 2010); *accord Pizzini v. Napolitano*, No. 10-61498-CIV-LENARD/Turnoff, 2011 U.S. Dist. LEXIS 68424, at *19 (S.D. Fla. June 17, 2011), *report and recommendation adopted*, No. 10-61498-CIV-LENARD/Turnoff, 2011 U.S. Dist. LEXIS 68464 (S.D. Fla. June 27, 2011).

**DONE** this 7th day of May, 2020.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE